IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MICHELLE A.,

        **Plaintiff,**

  v.                                  Civil Action 3:22-cv-109
                                         Judge Walter H. Rice
                                         Magistrate Judge Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michelle A. brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Child's Disability Insurance Benefits ("CDB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g), so that the ALJ may more fully address the applicability of Listing 12.04.

**I.    BACKGROUND**

On June 18, 2020, Plaintiff protectively filed an application for CDB alleging disability beginning May 11, 2006, due to anxiety, depression, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), insomnia, oppositional defiant disorder ("ODD"), suicidal thoughts, global developmental delay, and psychotic features. (Tr. 187–93, 207). After her application was denied both initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephonic hearing on October 26, 2021. (Tr. 34–69). The ALJ denied Plaintiff's application in a written decision on November 19, 2021. (Tr. 10–33). When the

Appeals Council denied review, that denial became the final decision of the Commissioner. (Tr. 1–6).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record, and the matter has been fully briefed. (Docs. 8, 9, 11, 12).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's and witness testimony from the administrative hearing:

> [Plaintiff] testified that she is 65 inches tall and that she weighs about 220 pounds. She testified that she graduated from high school. [Plaintiff] worked during the relevant past, but she is not presently working. Her past work did not reach the level of "substantial gainful activity" as defined for Social Security purposes. [Plaintiff] is able to operate a motor vehicle. She took part in track when she was in school. [Plaintiff] testified that she has difficulty maintaining focus. She complained of panic attacks that occur about once a week. Such episodes are brought on by stress. [Plaintiff] testified that she has difficulty speaking to other people if she is not familiar with them. She has one friend. She cares for several pets including a dog, two cats, fish, and a gerbil. [Plaintiff] testified that she has crying spells once or twice per week.
>
> [Plaintiff]'s mother, Diane [A.], testified that social interaction is difficult for [Plaintiff]. She requires reminders. [Plaintiff] enjoys shopping. She is a very kind-hearted person.

(Tr. 16).

### B. Relevant Medical Evidence

The ALJ also usefully summarized Plaintiff's educational and medical records as follows:

> While in school, [Plaintiff] studied under an Individual Education Plan (IEP) to address mental impairments including attention deficient hyperactivity disorder (ADHD), depression, and anxiety (Exhibit 10E). School records show that [Plaintiff] was found to have a Full-Scale IQ of 77 indicative of borderline intellectual functioning (Exhibit 10E at 6). It was noted that [Plaintiff]'s "test scores ranged from scores in the low average range to a couple scores in the average range with the majority of her scores falling in the low average range" (Exhibit 10E at 6).
>
> [Plaintiff] was found to be eligible for vocational rehabilitation services (Exhibit 18E). She was classified as "most significantly disabled" with serious limitations in communication, self-direction, and work skills. It was indicated that the

prescribed course of action would involve implementation of an individualized plan for employment. This evidence presented by Opportunities for Ohioans with Disabilities is not persuasive for a finding of disability. Rather, it suggests that [Plaintiff] is considered employable.

[Plaintiff] has a history of mental-health treatment and counseling for symptoms of depression and anxiety (Exhibits 1F to 4F, 6F, 10F, and 13F to 22F). Major depressive disorder with suicidal ideation, autistic disorder, attention deficit hyperactivity disorder, and posttraumatic stress disorder were diagnosed (Exhibit 16F at 49). Psychotropic medication was prescribed and was effective in alleviating [Plaintiff]'s symptoms (Exhibit 13F at 88). It was noted that [Plaintiff] had been doing very well while taking such medication. Her mother reported being pleased with [Plaintiff]'s progress (Exhibit 11F at 88).

(Tr. 17).

### C. Medical Opinions

The ALJ summarized the medical source opinions of record as follows:

In order to clarify the nature and severity of any existing mental impairment, [Plaintiff] was referred for a psychological examination by the Division of Disability Determination (DDD) on December 19, 2020 (Exhibit 5F). The examination was conducted by Brian Griffiths, Psy.D. At the time of this examination, [Plaintiff] was a senior in high school. She told Dr. Griffiths that she had worked as a janitor at the high school and at a restaurant with job duties including making pudding and filling sauce containers. She later worked for a short time at a pet store as a cashier and stocker. [Plaintiff] lives with her grandparents (who adopted her as a child). [Plaintiff] attends school. She helps with household chores. She does her homework. [Plaintiff] uses an i-phone. She plays video games. [Plaintiff] cares for several pets. She visits with her friend. She has a boyfriend. [Plaintiff] attends to her own personal grooming and hygiene needs. [Plaintiff] was polite and cooperative. Her affect was flat. Her speech was intelligible. Articulation was clear. WAIS-IV testing yielded a Full-Scale IQ of 72 (indicative of borderline intellectual functioning). Dr. Griffiths diagnosed major depressive disorder, post-traumatic stress disorder, panic disorder, borderline intellectual functioning, and ADHD. Dr. Griffiths described [Plaintiff] as "low functioning." She has difficulty mentally focusing. [Plaintiff] has difficulty trusting others. Her symptoms are aggravated by stress.

Psychologist Kristen Haskins, Psy.D., evaluated [Plaintiff]'s mental condition based on the evidence of record without examining [Plaintiff] on behalf of the Division of Disability Determination (DDD) on January 6, 2021 (Exhibit 2A at 4). In the opinion of Dr. Haskins, [Plaintiff] has "severe" mental impairments of depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder, and borderline intellectual functioning.

> [Plaintiff] experiences "moderate" limitation in her ability to understand, remember, or apply information. She experiences "moderate" limitation in her ability to interact with others. [Plaintiff] experiences "moderate" limitation in her ability to concentrate, persist, or maintain pace. She experiences "moderate" limitation in her ability to adapt and manage herself. According to Dr. Haskins, [Plaintiff] can understand, remember, and follow one-to-two step instructions. She can perform routine tasks without strict production quotas or time demands in a setting where she can work away from others. [Plaintiff] can interact with others in a superficial manner. She can work in a setting where there are well-defined goals. She can carry out simple, routine tasks with only minor changes in the work setting. Major changes would need to be explained in advance and gradually implemented to allow [Plaintiff] time to adjust to the new expectations (Exhibit 2A at 6-7).
>
> Psychologist Irma Johnston, Psy.D., evaluated [Plaintiff]'s mental condition based on the evidence of record without examining [Plaintiff] on behalf of the Division of Disability Determination (DDD) on May 21, 2021 (Exhibit 4A at 5-6). In the opinion of Dr. Johnston, [Plaintiff] has "severe" mental impairments of depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder, and borderline intellectual functioning. [Plaintiff] experiences "moderate" limitation in her ability to understand, remember, or apply information. She experiences "moderate" limitation in her ability to interact with others. [Plaintiff] experiences "moderate" limitation in her ability to concentrate, persist, or maintain pace. She experiences "moderate" limitation in her ability to adapt and manage herself. According to Dr. Johnston, [Plaintiff] can understand, remember, and follow one-to-two step instructions. She can perform routine tasks without strict production quotas or time demands in a setting where she can work away from others. [Plaintiff] can interact with others in a superficial manner. She can work in a setting where there are well-defined goals. She can carry out simple, routine tasks with only minor changes in the work setting. Major changes would need to be explained in advance and gradually implemented to allow [Plaintiff] time to adjust to the new expectations (Exhibit 4A at 7-8).

(Tr. 17–18).

### D. The ALJ's Decision

The ALJ found that Plaintiff was 18 years old, *i.e.*, she had not yet attained the age of 22, and had not engaged in substantial gainful activity. (Tr. 16). The ALJ determined that Plaintiff has the following severe impairments: depressive disorder, anxiety disorder with features of post-traumatic stress disorder, autism spectrum disorder, and attention deficit hyperactivity disorder (ADHD). (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in

4

combination, meet or medically equal a listed impairment. (Tr. 21).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) limited to performing 1-2 step simple, routine, repetitive tasks; (2) occasional superficial contact with co-workers and supervisors (superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (3) no public contact; (4) no fast-paced work; (5) no strict production quotas; (6) limited to performing jobs which involve very little, if any, change in the job duties or work routine from one day to the next.

(Tr. 22–23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully supported for the reasons explained in this decision." (Tr. 23).

The ALJ determined that Plaintiff has no past relevant work. (Tr. 27). Relying on the vocational expert's testimony, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy such as an industrial cleaner, floor waxer, and warehouse worker. (Tr. 27–28). He therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time since May 11, 2006. (Tr. 28).

**II.    STANDARD OF REVIEW**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health &*

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff alleges two assignments of errors: (1) the ALJ erred at step three in evaluating whether her impairments meet or equal Listings 12.04 and 12.05(B); and (2) the RFC determination is not supported by substantial evidence and the ALJ failed to carry the Step Five burden by failing to accommodate Plaintiff's need for a job coach. (Docs. 9, 12).

#### A. Step Three

Plaintiff alleges that the ALJ erred at Step Three by failing to find that she met or equaled the requirements of Listing 12.04 and 12.05(B). (Doc. 9 at 5–12). The Undersigned finds this assignment of error persuasive regarding Listing 12.04, but not regarding Listing 12.05(B).

At Step Three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). Plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at step three of the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). It is insufficient to come close to meeting the conditions of a Listing. *Higgins v.*

*Comm'r of Soc. Sec.*, No. 2:17-CV-1152, 2018 WL 5283940, at *4 (S.D. Ohio Oct. 24, 2018*), report and recommendation adopted*, No. 2:17-CV-1152, 2018 WL 6046319 (S.D. Ohio Nov. 19, 2018) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989).

It is Plaintiff's burden to provide sufficiently complete and detailed medical evidence to enable the Secretary to determine whether all a Listing's elements are met. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). "'Because satisfying the listings yields an automatic determination of disability . . . the evidentiary standards [at step three] . . . are more strenuous than for claims that proceed through the entire five-step evaluation.'" *Bianchetti*, 2018 WL 3873577, at *4 (alterations in original) (quoting *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014)).

1. Listing 12.04

Plaintiff asserts that the ALJ committed reversible error when determining that her mental impairments did not meet or equal Listing 12.04. Listing 12.04 establishes the criteria for depressive, bipolar, and related disorders. To satisfy this Listing, Plaintiff must establish: (1) the impairment-specific medical criteria in paragraph A; and (2) the functional limitations criteria in paragraph B or paragraph C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A1. In other words, Plaintiff must show she meets either paragraphs A and B, or paragraphs A and C for Listing 12.04.

Here, the ALJ determined:

The severity of [Plaintiff]'s impairments does not meet or medically equal the level of severity of an impairment described in section 12.04 (depressive, bipolar, and related disorders), section 12.06 (anxiety and obsessive-compulsive disorders), section 12.10 (autism spectrum disorder) section 12.11 (neurodevelopmental disorders), section 12.15 (trauma and stressor-related disorders), or any other section of Appendix 1, Subpart P, Regulations No. 4.

In making this finding, consideration has been given to whether the "paragraph B" criteria (section 12.00 of Appendix 1, Subpart P, Regulations No. 4) are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in

> "extreme" limitation in one or "marked" limitation in two of the following areas: ability to understand, remember, or apply information; ability to interact with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage oneself. An "extreme" limitation is an inability to function in the area independently, appropriately, and effectively on a sustained basis. A "marked" limitation is a seriously limited ability to function in the area independently, appropriately, and effectively on a sustained basis.
>
> As previously explained, it is found that [Plaintiff] experiences "moderate" limitation in her ability to understand, remember, or apply information. She experiences "moderate" limitation in her ability to interact with others. [Plaintiff] experiences "moderate" limitation in her ability to concentrate, persist, or maintain pace. She experiences "moderate" limitation in her ability to adapt or manage oneself. Because [Plaintiff]'s mental impairment does not cause at least one "extreme" limitation or two "marked" limitations, the "paragraph B" criteria are not satisfied. Consideration has also been given to whether the "paragraph C" criteria (section 12.00 of Appendix 1, Subpart P, Regulations No. 4 and pertaining to Listings 12.02, 12.03, 12.04, 12.06, and 12.15) are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in section 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation found to be applicable in the "paragraph B" mental function analysis.

(Tr. 21–22).

When considering the Paragraph B criteria, an ALJ uses a five-point scale (none, mild, moderate, marked, and extreme) to rate a claimant's degree of limitation in the four following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b). To satisfy that Paragraph B criteria, an ALJ must rate a claimant as having extreme limitations in one of these four areas or marked limitations in two of them.

In this case, the ALJ found that Plaintiff did not meet the Paragraph B criteria for Listing 12.04 because Plaintiff did not have an extreme limitation in any of the four functional areas or marked limitations in any two of them. Instead, the ALJ found that Plaintiff had only moderate limitations in all four functional areas: adapting or managing oneself, interacting with others, concentration, persistence or maintaining pace, and understanding, remembering, or applying information. (Tr. 19–21). Because the ALJ's findings regarding the four functional areas are supported by substantial evidence, the ALJ did not err in finding that Plaintiff did not meet the Paragraph B criteria.

Namely, the ALJ adopted the findings of the stage agency psychologists, Drs. Haskins and Johnston, both of whom found Plaintiff had moderate limitations in each of the four functional areas. (Tr. 18–19) (citing Tr. 75–77, 86–87). When considering medical opinions, an ALJ must use the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2).

The ALJ found that the state agency psychologists' opinions were supported by the other evidence of record. (Tr. 19–20). Particularly, he focused on the Plaintiff's graduation from high school with the accommodation of her Individual Education Plan ("IEP"), her history of work in competitive employment for short periods of time, and her self-reported activities of daily living. (*Id.*). He further found that the opinions were consistent with the findings of Dr. Griffiths, another examining psychologist. (*Id.*). Though the ALJ noted that Dr. Griffiths's testing of Plaintiff indicated "borderline intellectual functioning," he noted those scores were counterbalanced by other evidence in Dr. Griffiths's report, like Plaintiff's testimony about "her day-to-day activities and her recent successful completion of high school[,]" which suggest "her actual level of functioning appears to be much higher than those scores would suggest . . . ." (Tr. 25). All told, the ALJ's findings of moderate limitations were supported by substantial evidence, and therefore his finding that Plaintiff did not satisfy the Paragraph B criteria does not warrant remand.

Paragraph C requires that the claimant's "mental disorder in this listing category is 'serious and persistent;' that is [the claimant has] a medically documented history of the existence of the disorder over a period of at least 2 years[.]" 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(C). In addition, a claimant must submit evidence of both:

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.*

Regarding the Paragraph C criteria, the ALJ's disposition is quick and conclusory, merely stating that the criteria were considered, and the evidence failed to establish their presence. This brevity is not necessarily fatal to the opinion's overall logic, because the ALJ's opinion must be

10

read as a whole. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). If the ALJ sufficiently described why the evidence did not support the Paragraph C criteria elsewhere in the opinion, the parts could be taken together to carry his burden to "build an accurate and logical bridge between the evidence and his conclusion." *Waye v. Comm'r of Soc. Sec.*, No. 1:18-CV-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18CV201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019) (citing *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–46 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). Here, however, other portions of the ALJ's opinion suggest that the weight of the evidence did at least somewhat support the Paragraph C criteria, and without a more detailed explanation, are difficult to reconcile in a way which makes his reasoning clear.

First, the ALJ's opinion makes clear that Plaintiff's depressive disorder was serious and persistent. Depressive disorder was among the severe impairments enumerated by the ALJ. (Tr. 21). He further noted that Plaintiff's mental impairments were "well-documented . . . ." (Tr. 24). And the records before the ALJ spanned more than two years. Records noting Plaintiff's depressive symptoms span as early as May 2018 (Tr. 444–46) and as late as October 2021 (Tr. 1907–09). Records from a single hospital note acute depression as early as November 2018 (Tr. 2005) and as late as September 2021 (Tr. 1973).

Second, the ALJ's opinion and evidence of record supported that Plaintiff was engaged in ongoing medical treatment and mental health therapy that diminished her symptoms and signs of her mental disorder. Particularly, the ALJ noted "a history of mental-health treatment and counseling for symptoms of depression and anxiety." (Tr. 17) (citing Tr. 367–947, 958–1128, 1192–1373, 1565–2527). Additionally, the ALJ noted that "[p]sychotropic medication was prescribed and was effective in alleviating [Plaintiff's] symptoms." (*Id.*) (citing Tr. 1652).

Finally, the ALJ's opinion offers a mixed view of Plaintiff's capacity to adapt to changes in her environment and to demands that are already part of her daily life. Marginal adjustment means a "minimal capacity to adapt to changes . . ." and will be demonstrated "when the evidence shows that changes or increased demands have led to exacerbation of [a plaintiff's] symptoms and signs and to deterioration in your functioning[.]" 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(G)(2)(c). The ALJ emphasized that Plaintiff had difficulty dealing with changes. For example, he noted that Plaintiff could "function adequately in the performance of regular and routine daily activities." (Tr. 22). In crafting Plaintiff's RFC, he limited her "to performing routine 1-2 step simple, routine repetitive tasks[ ]" and "to performing jobs which involve very little, if any, change in the job duties or work routing from one day to the next." (Tr. 22–23). He incorporated these limitations as opined by the state agency reviewing psychologists, Drs. Haskins and Johnston, as he found their opinions largely supported by the objective medical records, and consistent with another examining psychologist, Dr. Griffiths. (Tr. 24–25).

While the ALJ rejected the portions of those opinions which suggested that Plaintiff would "need major changes explained in advance and implemented gradually[,]" he appeared to do so on the basis that he did not feel Plaintiff needed "special supervision" at work and because limiting her to routine repetitive tasks and "jobs which involve little, if any, change in the job duties or work routine" sufficiently addressed her functional limitations. (Tr. 25). Additionally, the ALJ earlier noted that Dr. Griffiths, whose opinion he found plausible and persuasive regarding Plaintiff's ability to adapt and manage herself, found that Plaintiff's "symptoms are aggravated by stress." (Tr. 20–21).

At base, the ALJ's conclusions at least partially support marginal adjustment, and clearly support Plaintiff's serious and persistent depressive disorder and ongoing medical treatment which

12

diminished her signs and symptoms. Without a supporting explanation of why the ALJ rejected the Paragraph C criteria, his decision regarding Listing 12.04 remains unclear. Accordingly, it is **RECOMMENDED** that the case be remanded so that the ALJ may more fully address the applicability of Listing 12.04.

    2.    *Listing 12.05*

Plaintiff also argues that the ALJ erred in determining that she did not meet Listing 12.05(B), Intellectual disorder. (Doc. 9 at 10–12). The Commissioner says that Plaintiff's "borderline intellectual functioning diagnosis" should instead be analyzed under Listing 12.11, Neurodevelopmental disorders. (Doc. 11 at 4–5). Regardless of which Listing applies, however, the Commissioner says the ALJ did not err in finding that Plaintiff did not meet the Listing. (*Id.* at 5–8). The Undersigned agrees that the ALJ did not err.

Both Listing 12.05(B) and Listing 12.11 require extreme limitation of one, or marked limitation of two, of the four functional areas. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(B)(2); § 12.11(B). As described above, the ALJ's findings of moderate limitations in each of the four functional areas were supported by substantial evidence, and therefore his finding that Plaintiff did not meet Listings 2.05(B) or 2.11 does not warrant remand.

    **B. RFC determination**

Plaintiff says "the ALJ reversibly erred in assessing [Plaintiff]'s RFC and failed to carry the Step Five burden by failing to accommodate [her] need for a job coach or aide." (Doc. 9 at 13). At Step Five of an ALJ's sequential analysis, the ALJ determines whether Plaintiff, based on her residual functional capacity and vocational factors (such as age, education, and work experience), can "make an adjustment to other work." 20 C.F.R. § 404.1520(g)(1). Unlike the prior steps, the Commissioner bears the burden of proof and "must identify a significant number of jobs in the

13

economy that accommodate [Plaintiff]'s residual functional capacity and vocational profile." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 469 (6th Cir. 2017) (quotation marks and citations omitted). "[T]he testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with [Plaintiff]'s limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004).

Here, the ALJ relied upon the vocational expert ("VE")'s testimony regarding the jobs a hypothetical individual with Plaintiff's RFC and vocational profile could perform. His finding is therefore supported by substantial evidence unless his hypothetical misstated Plaintiff's RFC and vocational profile. Here, Plaintiff says, lays the ALJ's error. She says the ALJ should have accommodated her need for a job coach to assist her with work in her RFC. (Doc. 9 at 12–13). Because the VE testified that an individual who needed a job coach would have no available jobs in the competitive work market (Tr. 66), such an accommodation in the RFC would be work-preclusive. In other words, Plaintiff says the ALJ erred by not including the need for a job coach in the RFC.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in her case file. *Id.*; *see also* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5).

---

[1] The regulations define prior administrative findings:

A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological

14

Notably, Plaintiff identifies no medical opinion which stated she would need a job coach to successfully function at work. Instead, she relies on her own testimony regarding difficulties in her part-time employment, her use of an IEP in high school that allowed for "more individualized instruction" and "frequent monitoring," and a determination from Opportunities for Ohioans with Disabilities which noted she had "limitations in communication, self-direction, and work skills." (Doc. 9 at 12–13). Yet, the ALJ simply had a different view of this evidence. The determination from Opportunities for Ohioans with Disabilities only noted that Plaintiff was eligible for vocational-rehabilitation services and included a checklist which further noted its view of Plaintiff's impaired areas of functioning. (Tr. 359). The ALJ did not find the determination persuasive for a finding of disability. (Tr. 17). And, as described above, the ALJ found that Plaintiff's completion of high school and past part-time employment supported that she was only moderately limited in the four functional areas and could participate in competitive employment. (Tr. 19–22). And the ALJ specifically rejected medical opinions to the extent they suggested that Plaintiff would require "special supervision" at work. (Tr. 25).

At base, Plaintiff has not demonstrated that the ALJ's differing view of the subjective evidence she proffered is in error. The ALJ's RFC determination, and therefore his conclusions at Step Five, are supported by substantial evidence. The Undersigned finds this allegation of error without merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and

---

consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

20 C.F.R § 404.1513(a)(2), (5).

15

Administrative Law Judge under Sentence Four of § 405(g), so that the ALJ may more fully address the applicability of Listing 12.04.

## V.   PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   January 9, 2023                                             /s/ Kimberly A. Jolson
                                                                    KIMBERLY A. JOLSON
                                                                    UNITED STATES MAGISTRATE JUDGE